IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT ALEXANDER, # 06204-021, | ) |
| Petitioner, | ) ) ) |
| vs. | ) ) Case No. 17-cv-545-NJR |
| SHANNON D. WITHERS,[1] | ) ) ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Robert Alexander, an individual in the custody of the Bureau of Prisons, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 to challenge the length of his incarceration after his parole was revoked. (Doc. 1). At the time he brought this action, Alexander was incarcerated at the USP-Marion. He was later transferred to another federal prison, and most recently informed the Court that he is in the custody of a Residential Reentry Management Center in Atlanta, Georgia. (Doc. 27). Alexander is serving a sentence of approximately 239 months as a result of a 2012 revocation of his parole. (Doc. 1, p. 12).

### RELEVANT FACTS AND PROCEDURAL HISTORY

Alexander was convicted of bank robbery in the United States District Court for the Southern District of Georgia and, on April 3, 1987, he was sentenced to a 20 year term of imprisonment. (Doc. 15, p. 1; Doc. 15-1). He was released on parole in September 1993. (Doc. 15,

---

[1] Warden Shannon Withers of the FCI-Coleman Low, Florida, was substituted as the Respondent in this action on September 26, 2017, when Alexander was transferred to his custody. (Doc. 18). The proper respondent in a habeas corpus action is the warden of the institution where the petitioner is confined. *See Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005) (proper habeas respondent is the prisoner's current custodian). Alexander is no longer in the custody of Withers; he submitted a change of address in September 2019 stating that he is now in Georgia. (Doc. 27). In light of the disposition of this case, however, the Court does not find it necessary to substitute Alexander's current custodian as Respondent.

1

p. 1). In March 1997, his parole was revoked for the first time, and he was released on parole again in September 1997. *Id.*

In July 2000, Alexander was arrested in Georgia on three charges: rape (Count 1); enticing a child for indecent purposes (Count 2); and child molestation (Count 3). (Doc. 15, p. 1; Doc. 15-3). In December 2002, Alexander pled guilty to a reduced charge of statutory rape and was sentenced to 20 years imprisonment. (Doc. 1, p. 1; Doc. 15, p. 2; Doc. 15-3).

On February 20, 2012, after Alexander completed serving his required period of incarceration on the Georgia offense, the United States Parole Commission executed the parole revocation warrant it had issued in 2000 shortly after Alexander's state arrest.[2] (Doc. 15, p. 2; Doc. 15-4, p. 1). The Commission's parole revocation hearing was held on June 28, 2012. (Doc. 15-4). Based on Alexander's rape conviction and information contained in the police reports relating to the enticing and child molestation charges, the hearing officer found him in violation as to all three charges. (Doc. 15-4, p. 2). Alexander chose not to testify about the offense conduct, to avoid possible self-incrimination regarding a pending state habeas action. *Id.* The officer noted that Alexander had already served 143 months in custody, and calculated his re-parole guideline range at 78-110 more months to be served before release. (Doc. 15-4, p. 3). This was based on an Offense Severity Category of 7, because the revocation was based on a rape conviction, and a Salient Factor Score of 5. *Id.* The officer recommended that Alexander should be incarcerated "above the guidelines" until the expiration of his sentence, however, because he presented a more serious risk to the public than indicated by the numerical scores. (Doc. 15-4, pp. 4-5). In particular,

---

[2] Significantly, because Alexander committed the original federal bank robbery offense before November 1, 1987, the United States Parole Commission continues to have jurisdiction over his parole, pursuant to 18 U.S.C. §§ 4201-4218. After the Sentencing Reform Act took effect on November 1, 1987, "parole" was eliminated going forward and was replaced with the current system of "supervised release." *See Edwards v. Cross*, 801 F.3d 869, 870 (7th Cir. 2015).

2

the officer cited evidence that Alexander had drugged the 12-year-old victim and continued to deny the assault until DNA testing confirmed he had impregnated her and given her a sexually transmitted disease. *Id.* Alexander's parole was revoked on September 24, 2012. (Doc. 1, pp. 12-14; Doc. 15-4; Doc. 15-5).

Alexander appealed the revocation of his parole, but the National Appeals Board affirmed the Commission's action as well as its Category 7 rating and above-guidelines incarceration decision. (Doc. 1, p. 15; Doc. 15-6).

The Commission held an interim hearing in March 2016 and determined that there was no reason to change the previous decision to keep him in custody until expiration. (Doc. 1, pp. 16-17; Doc. 15-7). That decision was affirmed after Alexander's appeal. (Doc. 1, p. 18; Doc. 15-8).

## APPLICABLE LEGAL STANDARDS

A federal prisoner may challenge the execution of his or her sentence in a petition under 28 U.S.C. § 2241. *See Romandine v. United States*, 206 F.3d 731, 736 (7th Cir. 2000); *Waletzki v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994) (Where petitioner is "attacking the fact or length of his confinement in a federal prison on the basis of something that happened after he was convicted and sentenced, habeas corpus is the right remedy.").

The United States Parole Commission is vested with broad discretion to grant or deny parole, as well as to make parole revocation determinations; relief from the Commission's action may only be granted in limited circumstances. *See Walrath v. Getty*, 71 F.3d 679, 684 (7th Cir. 1995). On review, the district court's "inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions." *Id.*; *see also Kramer v. Jenkins*, 803 F.2d 896, 901 (7th Cir. 1986) ("Our review ... is confined to the record before the Commission and limited to a search for 'some evidence' in support of the decision."). A court cannot reverse a decision of the Commission

"unless, absent procedural or legal error, it is arbitrary, irrational, unreasonable, irrelevant or capricious." *Schieselman v. U.S. Parole Comm'n*, 858 F.2d 1232, 1237 (7th Cir. 1988) (internal quotations omitted); *see also Pulver v. Brennan*, 912 F.2d 894, 896 (7th Cir. 1990); *Storm v. U.S. Parole Comm'n*, 667 F. App'x 156, 157 (7th Cir. 2016).

When the Commission revokes parole, it also has discretion to determine how much of the prisoner's remaining sentence must be served in custody before he or she may again be released on parole. Incarceration above the applicable guidelines may be ordered for "good cause," so long as the prisoner is provided "with particularity the reasons for [the] determination, including a summary of the information relied upon." 18 U.S.C. § 4206(c); 28 C.F.R. § 2.20(c) & (d). The legislative history of § 4206(c) suggests a broad reading of "good cause," to include grounds set forth by the Commission in good faith which are "not arbitrary, irrational, unreasonable, irrelevant, or capricious." *Solomon v. Elsea*, 676 F.2d 282, 287 (7th Cir. 1982).

## ANALYSIS

Alexander asserts four grounds for habeas relief: (1) the Commission failed to comply with its statutory obligation or exceeded the limits of its statutory authority, and violated his due process rights, by categorizing his offense severity level based on the predicate rape charge instead of the reduced charge to which he pled guilty; (2) the Commission used the same information (the original rape charge) both to establish the parole guidelines and to justify a departure from the guidelines; (3) the Commission treated him differently by not giving him credit for superior programming and good conduct; and (4) his attorney's performance at the revocation hearing was deficient. (Doc. 1, pp. 7-10).

*Offense Severity Rating*

The Parole Commission is directed by statute to consider available and relevant

4

information regarding a prisoner's criminal record in order to determine whether the prisoner should be released on parole, including presentence investigation reports and victim statements. 18 U.S.C. § 4207; 28 C.F.R. § 2.19(a). The Commission also must consider "such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available." 28 C.F.R. § 2.19(b). "It is well established that the Parole Commission may look beyond the offense of conviction when determining a prisoner's offense severity rating or setting a parole date outside of the guidelines." *Kramer v. Jenkins*, No. 85-C-9926, 1986 WL 5658, at *3 (N.D. Ill. May 6, 1986), *aff'd*, 803 F.2d 896 (7th Cir. 1986), *on reh'g*, 806 F.2d 140 (7th Cir. 1986) (internal citations omitted). The Commission "may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond." 28 C.F.R. § 2.19(c). If the prisoner disputes the accuracy of the information, the Commission resolves the dispute using the preponderance of the evidence standard. *Id.*

Alexander argues that the Commission overstated his offense severity category of 7, resulting in a miscalculation of the guideline range.[3] He further complains that the upward departure from the range was "arbitrary, capricious, and [an] abuse of its discretion" because it was based on the "alleged victim's inconsistent statements" regarding whether he drugged her and gave her a sexually transmitted disease. (Doc. 1, p. 7). In his Reply, Alexander asserts that at his hearing, the complete police report was not presented, and he later submitted "some missing exculpatory parts of the police report" to the Commission during his appeal. (Doc. 23, p. 3). He argues that the Commission failed to apply the preponderance of the evidence standard in resolving

---

[3] The guidelines for the numerical rating of the offense severity and time to be served before release are set forth at 28 C.F.R. § 2.20.

5

his dispute over the reliability of the evidence it considered. (Doc. 23, pp. 5-8).

The hearing officer's recommendation, and the decision to revoke Alexander's parole and keep him in custody until expiration, relied on information contained in the police reports from the rape case, specifically the evidence indicating that he drugged the 12-year-old victim before sexually assaulting her while she was in a "groggy, sleep like condition." (Doc. 15-4, p. 4; Doc. 15-5, pp. 1-2). The Supreme Court has stated that "letters, affidavits, and other material that would not be admissible in an adversary criminal trial" may be considered as evidence in the context of a parole revocation hearing. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). Such material may include police reports. *See Brothers v. U.S. Parole Comm'n*, 5 F.3d 535 (9th Cir. 1993) (table); *U.S. ex rel. Moore v. Conner*, 284 F. Supp. 2d 1092, 1096 (N.D. Ill. 2003). Significantly, the hearing summary memorializes Alexander's decision not to comment on the offense conduct, and his understanding that the Commission would make its findings of fact "based on the information available to the Examiner," specifically, the contents of the police reports. (Doc. 15-4, p. 2). Alexander did not raise any objection to this procedure or dispute the accuracy of the police reports at the hearing, therefore, he did not trigger at that time the Commission's obligation to resolve a dispute by evaluating the preponderance of the evidence. *See* 28 C.F.R. § 2.19(c).

Alexander asserts that he presented his dispute and the allegedly exculpatory portions of the police report to the Commission in the course of his appeal. His Reply includes excerpts of an interview with the victim's sister, who stated that the victim told her that she was awake when Alexander had sex with her; and with Alexander's mother, who said that her nephew told her he left Alexander alone with the victim for only about 15 minutes. (Doc. 30, p. 1). He also included an emergency department medical report stating that the victim denied there was a sexual assault and that upon examination, her hymen appeared intact with no evidence of trauma. (Doc. 30, p. 2).

6

The National Appeals Board, after considering Alexander's appeal of the decision to deny parole (which presumably included Alexander's argument that these excerpts contradict the portions of the police report supporting the Commission's findings), affirmed the original decision. (Doc. 15-6). The Appeals Board ruling did not explicitly state that its finding was based on a "preponderance of the evidence," but it set forth the specific facts supporting the category 7 offense severity rating, the decision to deny parole, and the conclusion that Alexander presented a more serious risk than his numerical score indicated. This recitation is more than sufficient to demonstrate that the Commission's decision had a rational basis in the record and was supported by "some evidence," as well as "good cause" to depart from the guidelines. Alexander has not demonstrated that the offense severity rating or the decision to keep him in custody beyond the guideline range was arbitrary, capricious, an abuse of discretion, or otherwise improper.

### *"Double Counting" of Rape Charge*

Alexander argues that the Commission used the same information both to establish his guideline range and to depart from the guidelines. (Doc. 1, p. 8). His offense severity rating of 7 was based on the rape offense, and he asserts that the aggravating factors of "drugging and raping the victim" were given twice the weight when the Commission cited those factors to justify its upward departure from the guidelines. (Doc. 23, p. 8).

If the Commission uses a single unfavorable factor both to establish the parole guidelines and to justify a departure from them, it would amount to impermissible double counting. *See Romano v. Baer*, 805 F.2d 268, 271 (7th Cir. 1986) ("the crucial comparison is between the factors used to place a defendant in a severity category and the factors used to continue a prisoner beyond the guidelines"); *Solomon v. Elsea*, 676 F.2d 282, 287 (7th Cir. 1982) ("It is the extenuating circumstances of the particular offense, not the nature of the violation categorizing [the inmate] in

7

the guidelines, which must make up the necessary good cause [for departure from the guidelines]"].).

Here, the Commission assigned Alexander an offense severity level of category 7 "because it involved Rape." (Doc. 15-4, p. 3; Doc. 15-5, p. 2).[4] The factors relied on by the Commission to depart from the guidelines went beyond the basic nature of the offense, however. It explained that Alexander was a more serious risk than his salient factor score would indicate, because of the evidence suggesting he drugged the victim, his denial of the assault until a DNA test confirmed he had impregnated the 12-year-old victim, and the indication that he gave her a sexually transmitted disease. (Doc. 15-4, pp. 3-5; Doc. 15-5, p. 2). The Commission added, "these aggravating factors are not adequate[ly] assessed in the Offense Severity Rating of Category 7[.]" (Doc. 15-4, p. 5; Doc. 15-5, p. 2).

The National Appeals Board noted that even if Alexander's criminal conduct had been rated according to his actual conviction for statutory rape, the category 7 rating was correct, because it involved "predatory sexual behavior." (Doc. 15-6); *see* 28 C.F.R. § 2.20, Subchapter D, 232(d). The Board explained this conclusion:

> (1) you took control over the victim and her sister for the ostensible purpose of helping the girls' mother out; (2) rather than taking the girls to your residence, where your wife was present, you brought the victim and her sister to your mother's house knowing that your mother was out of town; and (3) you gave the victim and her sister drinks mixed with drugs that put them to sleep and enabled you to have sexual intercourse with the victim without resistance.

(Doc. 15-6).

The first two of these factors are distinct from the reasons previously listed in support of the Commission's decision to depart from the guidelines, thus, there was no double counting of

---

[4] The salient factor score of 5 included only the number of Alexander's prior convictions, not the nature of those offenses. (Doc. 15-5, p. 3). Together with the offense severity category of 7, these ratings point to the guideline range of 78-110 months. 28 C.F.R. § 2.20; (Doc. 15-4, p. 3).

8

those matters. The third factor supporting the "predatory" category 7 rating – the use of a drug to incapacitate the victim – had also been cited as one of the reasons for departing from the guidelines. But even if that duplicative aggravating factor is discounted, the remaining factors (denial of the assault and infecting the victim with an STD), as well as the Appeals Board's observation that Alexander reiterated his claim of innocence in his appeal, provided distinct grounds to support the departure. (Doc. 15-6). Therefore, no double counting occurred. *See Romano*, 805 F.2d at 271.

*Differential Treatment*

Alexander argues that the Commission "treated [him] differently towards receiving credit for superior programming and good conduct" while he was serving time in state custody prior to the revocation proceeding. (Doc. 1, p. 9).

As Respondent points out, Alexander has failed to adequately plead an equal protection claim for this allegedly differential treatment. He does not set forth allegations suggesting that he was singled out for ill treatment, either as an individual or as a member of an identifiable group, in comparison with others who are similarly situated. *See, e.g.*, *United States v. Windsor*, 570 U.S. 744 (2013) (discussing equal protection component of the Fifth Amendment).

The Commission has discretion to advance a prisoner's parole date for "superior program achievement (in addition to a good conduct record)" in such areas as "educational, vocational, industry, or counseling programs." 28 C.F.R. § 2.60(a) & (b). Notably, the Commission is not required to award this benefit. *Hansen v. Pitzer*, 108 F.3d 1379, 1997 WL 117275 at *2 (7th Cir. 1997) (table). The record reflects that the hearing officer was presented with information regarding Alexander's achievements while in state custody, including completion of classes such as "Motivation for Change," several vocational programs, and obtaining his GED. (Doc. 15-4, p. 3). He did not incur any disciplinary infractions. *Id.* This recitation indicates that the mitigating

information was considered, but did not outweigh the other factors which led to the recommendation to revoke parole and keep Alexander in custody until expiration of his sentence. As such, Alexander has not demonstrated that the Commission abused its discretion or otherwise violated the governing statute or regulations.

*Deficient Attorney Performance*

Finally, Alexander claims that during the revocation hearing, his attorney's performance was deficient and prejudiced him. (Doc. 1, p. 10; Doc. 23, pp. 9-11). Specifically, counsel failed to properly advocate for him in that she did not obtain his full state case discovery material (which he claims would have included exculpatory material), failed to properly object regarding the correct offense to which he pled guilty (statutory rape as opposed to rape), and did not know the rules and regulations governing Parole Commission proceedings. (Doc. 1, p. 10). Further, she gave him bad advice, which he followed, to invoke his right against self-incrimination and decline to discuss the offense conduct at the hearing; did not attempt to discredit the victim's allegations in the police report; and did not object to the "double counting" of aggravating factors. (Doc. 23, pp. 9-11). Alexander asserts that under the standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), the result of the revocation proceeding would have been different if not for his counsel's unprofessional errors. (Doc. 23, p. 9).

Respondent counters that the Sixth Amendment right to effective assistance of counsel during a criminal trial does not apply in the context of a parole revocation proceeding. (Doc. 15, pp. 9-10). As the Supreme Court has stated, "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).[5]

---

[5] The *Morrissey* Court set forth minimal due process requirements to be observed by the states in parole revocation proceedings but did not decide whether a parolee is entitled to counsel. *Morrissey*, 408 U.S. at

As Alexander correctly observes, a federal parolee's right to counsel in a parole revocation proceeding is set forth in the governing statute, 18 U.S.C. § 4214(a)(2)(B) (Doc. 23, p. 9); it does not arise from the Constitution. The statute does not guarantee the right to effective attorney representation, and Alexander has not presented the Court with any authority to support his contention that he had the right to effective assistance of counsel in his hearing before the Commission.

Even assuming that ineffective assistance of counsel would rise to the level of a denial of due process in the context of a parole revocation hearing, Alexander would have to meet the *Strickland* standard. *See U.S. ex rel. Little v. Graber*, No. 03-C-4917, 2003 WL 22956008, at *6 (N.D. Ill. Dec. 11, 2003). None of the alleged deficiencies in his attorney's representation demonstrates a reasonable probability that the result of the hearing would have been different but for counsel's unprofessional errors.

As discussed above, the Commission had broad discretion to consider relevant information to determine whether Alexander's parole should be revoked, and the record includes ample evidence to support the Commission's decision, even if the allegedly exculpatory evidence had been presented by counsel at the time of the hearing. The same is true as to counsel's failure to attempt to discredit the victim's allegations contained in the police report by pointing out what Alexander describes as inconsistencies. As previously discussed, the Commission's consideration of the original rape charge rather than relying only on the statutory rape conviction was not improper, and the Commission did not engage in improper "double counting" of factors used to rate Alexander's conduct and to depart from its guideline calculation. Thus, even if counsel had

---

488-89. When confronted with that question, the Court determined that due process would require a state to provide counsel in some, but not all, parole revocation proceedings. *Gagnon v. Scarpelli*, 411 U.S. 778, 790-91 (1973). This limited right cuts against the notion that an accused parole violator is entitled to the effective assistance of counsel.

objected to those matters, the outcome would likely have been the same. Finally, Alexander has not articulated how his attorney's alleged lack of knowledge of the Commission's rules and regulations prejudiced him. He likewise has not explained how the Commission would have reached a different result if counsel had not advised him to remain silent and if he had given testimony about his conduct that prompted the revocation. In summary, Alexander has not demonstrated that the Commission would have re-paroled him on an earlier date if not for the alleged errors on the part of his attorney.

## CONCLUSION

Robert Alexander's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1), is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

If Alexander wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Alexander plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Alexander does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion

for relief from a final judgment, do not toll the deadline for an appeal.

It is not necessary for Alexander to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED: November 21, 2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**